**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SEAN ROBERT CAMPBELL,                                    Case No. 17-cv-292

                                                         Dlott, J.
                        Plaintiff,                       Bowman, M.J.
        v.


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Sean R. Campbell filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error. For the reasons explained below, I conclude that the ALJ's finding of non-disability is supported by substantial evidence and should be AFFIRMED.

### I. Summary of Administrative Record

First in December 2010, and later in January 2012, Plaintiff filed two applications for Disability Insurance Benefits ("DIB"). Both of those applications were denied initially, and Plaintiff did not further appeal beyond the respective July 1, 2011 and May 22, 2012 denials of reconsideration. (Tr. 20; Tr. 110). Instead, on August 17, 2013, Plaintiff filed new applications for DIB and for Supplemental Security Income ("SSI"), alleging disability primarily due to low back and left shoulder problems beginning on September 5, 2009. (Tr. 267-274).

In addition to his back and shoulder issues, Plaintiff complained of umbilical hernia, [unspecified] hernia, bad feet, bad knees, ADHD, depression and paranoia. (Tr.

260).  After his claims were again denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing, which was held before an administrative law judge ("ALJ") on October 29, 2015.  Through counsel,[1] Plaintiff and a vocational expert appeared and gave testimony. (Tr. 38-83).  After determining that Plaintiff had presented new and material evidence pertaining to the same time period, the ALJ did not apply the doctrine of administrative res judicata concerning the prior two denials. (Tr. 20).  Nevertheless, on March 28, 2016, the ALJ issued a new written decision that again determined that Plaintiff was not disabled. (Tr. 20-33).  The Appeals Council denied further review, leaving the ALJ's decision as the Commissioner's final determination.  Plaintiff filed this appeal to obtain additional judicial review.

Plaintiff was just 25 years old on the date of his alleged disability in 2009, and remained in the younger individual age category through the date of the ALJ's decision. He has a high school education and past relevant work as a dishwasher, but has not engaged in substantial gainful activity since September 5, 2009.  (Tr. 22).  His date last insured ("DLI") for purposes of his DIB application, was September 30, 2014.[2]

The record reflects that Plaintiff lives in a third floor apartment with his fiancé.[3] He is able to do household chores (laundry, cooking, sweeping, and mopping, *see* Tr. 269) and helps care for their two cats.  He drives two or three times a week to attend appointments for himself or his fiancé, or to go shopping.  He also attends a church program every Friday night.   (Tr. 49-50).  He watches TV and plays video games, and

---

[1]Plaintiff appeared without counsel at a hearing on June 22, 2015, but that hearing was continued to permit Plaintiff to obtain counsel, and to submit additional medical records. (Tr. 84-95).
[2]Although Plaintiff would be required to prove disability prior to his DLI in order to obtain the higher benefits available through DIB, his SSI application is independent of that insured status, and has no earnings requirement.
[3]Plaintiff testified that his fiancé also does not work outside the home because she is disabled.  (Tr. 77).

socializes on the phone and by going to a park to "ha[n]g out." (Tr. 268, 271; *see also generally* Tr. 29-30, 65, 314).

The ALJ determined that Plaintiff suffers from severe impairments of "lumbar degenerative disc disease; left shoulder degenerative joint disease, obesity, bipolar depressive disorder, and anxiety. (Tr. 23). The ALJ found other mild impairments, including cervical degenerative disc disease, bilateral knee arthritis, an umbilical hernia and history of ADHD, but determined that none of those impairments caused more than minimal limitations on Plaintiff's ability to work. (*Id.*) The ALJ also determined that Plaintiff does not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff is entitled to a presumption of disability. (*Id.*) Plaintiff does not dispute any of those findings.

What the Plaintiff does dispute is the ALJ's finding that he retained the residual functional capacity ("RFC") to perform a limited range of light work with the following restrictions:

> [H]e should never climb ladders, ropes or scaffolds; he can occasionally climb ramps or stairs, stoop and crawl; and he is limited to occasional overhead reaching with the left upper extremity. The claimant is further limited to routine tasks with no fast-paced work, no strict production quotas, and minimal or infrequent changes in the work setting; and he is limited to frequent interaction with the public, coworkers and supervisors.

(Tr. 26).

Both parties agree that Plaintiff cannot perform any of his past work as a dishwasher. However, based on the testimony of a vocational expert, the ALJ determined that Plaintiff would be able to perform a substantial number of jobs in the national economy, including the representative unskilled occupations of housekeeping cleaner, sales attendant, or clerical assistant. (Tr. 32). Therefore, the ALJ concluded that Plaintiff was not under a disability. (*Id.*)

Plaintiff argues that the ALJ erred by: (1) failing to adequately support the RFC as determined; (2) failing to adopt the 2011 opinion of an examining consulting physician that Plaintiff could not sit/stand or walk more than 4 hours per day; (3) failing to give adequate weight to the opinions of consulting psychologists; (4) determining that Plaintiff was not fully credible; and (5) failing to include additional limitations in the hypothetical question posed to the vocational expert. I find no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. Plaintiff's Claims

### 1. Substantial Evidence Supports the Physical RFC

Plaintiff first argues that the ALJ erred in determining that Plaintiff's left shoulder and neck impairments did not cause additional functional limitations beyond the overhead lifting restriction on the left. Plaintiff maintains that unskilled jobs require good use of both hands and arms, and that the ALJ failed to adequately consider that fact and/or include additional handling, fingering, feeling or reaching restrictions. In addition, Plaintiff contends that the ALJ failed to adopt additional postural limitations contained in the 2011 RFC opinion of an examining consultant.[4]

Before addressing Plaintiff's more specific complaints, I note that more generally, Plaintiff asserts that the ALJ failed to adequately articulate how he arrived at the physical RFC, since he did not adopt any particular medical opinion of record. However, no treating physician offered any opinions concerning Plaintiff's functional limitations, and the ALJ specifically discussed all of the medical opinion evidence offered by agency consultants. The latter evidence included two examining consulting opinions rendered in connection with Plaintiff's first two DIB applications, and two more non-examining consulting opinions offered in connection with Plaintiff's most recent DIB and SSI applications. The greatest limitations were assessed by the first consulting physician who examined Plaintiff in 2011, five years prior to the ALJ's decision. By contrast, the most recent consultants opined that Plaintiff has no physical limitations at all.

---

[4]For the convenience of this Court, discussion of Plaintiff's first two errors has been combined in this section.

Contrary to Plaintiff's argument, the undersigned concludes that the ALJ adequately articulated the basis for the weight he gave to each of the four medical source opinions, and that the physical RFC as determined is supported by substantial evidence in the record as a whole. I will first review the ALJ's analysis of the opinion evidence, prior to turning to Plaintiff's two specific complaints concerning the ALJ's failure to include additional postural limitations and/or additional arm or gripping/grasping and fingering limitations.

### a. Relevant Medical Opinion Evidence

The first consulting exam was conducted by Alex Perdomo, M.D. of Silver Star Family Medicine, at the request of the Florida Department of Health, Division of Disability Determinations, prior to the denial of Plaintiff's first application for benefits. (Tr. 307-308). In that February 2011 examination, Plaintiff walked without difficulty and appeared to be in no acute distress. He demonstrated full range of motion of the cervical spine, but was found to have a decreased range of motion of the lumbar spine and shoulders due to reported pain radiating into his mid and lower back. He also was unable to squat or stand on his toes or heels due to complaints of lower back pain. (Tr. 307). However, he had a negative straight leg raise, a normal neurological exam, negative Romberg's, normal gait, normal grip strength and fine manipulation, and no significant bilateral knee functional limitations. Range of motion testing revealed limitation in Plaintiff's shoulder flexion bilaterally, with slightly greater limitation on the right than on the left, but extremely mild limitation and essentially normal findings in his elbows and wrists. (Tr. 309-310). His hands were also normal.

Despite modest clinical findings that appeared to be based primarily on Plaintiff's subjective reports of pain, and x-ray evidence suggesting only mild degenerative

7

disease, Dr. Perdomo concluded that Plaintiff "can stand, walk, and sit for a combined total of four hours in an eight-hour workday" – an extreme postural limitation that is *de facto* work-preclusive. (Tr. 308). Dr. Perdomo also limited Plaintiff to lifting and carrying no more than thirty pounds, but imposed no overhead lifting or other restrictions. (*Id.*)

The ALJ rejected Dr. Perdomo's extreme postural limitations as unsupported, as did the prior agency reviewers who reviewed his opinions in the context of the earlier adverse decisions. The ALJ stated that Dr. Perdomo's RFC opinions were entitled to only "limited weight" in light of inconsistent and conflicting evidence, including x-ray findings that reflected only

> mild degenerative disc disease of the lower lumbosacral spine and his findings of no significant bilateral knee functional limitations… Dr. Perdomo's rather extreme limitations are based on his finding of moderate to severe low back functional limitations upon examination, despite the evidence that the lumbar spine x-rays were mild and the claimant walked with a normal gait. Dr. Perdomo's opinion appears to be based, in part, upon subjective information.

(Tr. 28). Despite rejecting the extreme postural limitations, the ALJ found greater lifting restrictions than determined by Dr. Perdomo, and accordingly restricted Plaintiff to light work (no more than 20 pounds), with an overhead reaching restriction on the left.

Plaintiff underwent a second consulting examination in Mach 2012 by Carol Grant, M.D., prior to denial of Plaintiff's second DIB application. Dr. Grant's report noted that Plaintiff reported left shoulder pain for the past 20 years,[5] which had gotten progressively worse and reportedly increased with reaching and lifting. (Tr. 317). In contrast to Dr. Perdomo, Dr. Grant found virtually normal right shoulder range of motion and less severe range of motion limitation of Plaintiff's lumbar spine. (Tr. 319-20). In

---

[5]Given the date of the examination, Plaintiff's report indicates he began experiencing left shoulder pain as a seven-year-old.

another improvement, at his March 2012 exam Plaintiff was able to squat and toe and heel walk, and again was observed to have a normal gait. (Tr. 320). Elbows, forearms, wrists, and hands were all normal, as was Plaintiff's neurological exam, with normal manipulation and grip strength. The only abnormal findings noted by Dr. Grant were tenderness with a decreased range of motion and shoulder strength in the left shoulder alone (also less than found by Dr. Perdomo), and a left shoulder x-ray that showed moderate AC joint hypertrophy but no acute bony abnormalities. (*Id.*) Dr. Grant did not offer any RFC opinions other than the single general statement, without any elaboration: "The patient's subjective complaints are consistent with the objective medical findings." (Tr. 23, citing Tr. 320). To the extent that single sentence suggested any greater functional limitations than the RFC determined by the ALJ, the ALJ rejected Dr. Grant's opinion as entitled to "no weight," because it was "vague" and failed to "provide sufficient information regarding the claimant's physical functional limitations." (Tr. 28). The ALJ specifically cited Dr. Grant's findings of a normal gait, and abilities to squat and heel and toe walk.

No new consulting examinations were performed after March 2012 in connection with Plaintiff's most recent applications for benefits. Instead, two agency consultants, Eli Perencivich, D.O., and Frank Stroebel, M.D., conducted a review of the few records that Plaintiff had then submitted, including the previously rejected examining consultant opinions. Based their review, Drs. Perencivich and Stroebel opined that Plaintiff had no severe physical impairments at all. (Tr. 115, 129, 134). However, Plaintiff obtained more medical treatment after those consultants' paper review,[6] beginning in 2014.

---

[6]There are few treatment records prior to 2014. By the time of his first hearing, Plaintiff had submitted only one ER record. After he obtained counsel at the second hearing, counsel acknowledged the paucity

Plaintiff's later medical records more clearly demonstrated the severe physical impairments and physical limitations found by the ALJ in this case. After detailing that contrary medical evidence, the ALJ appropriately rejected, as entitled to "no weight," the opinions of Drs. Perencivich and Stroebel that Plaintiff was not limited by any severe physical impairment.

Relevant agency regulations and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See* e.g., 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)(explaining that the final responsibility for deciding the RFC "is reserved to the Commissioner."); *see also* 20 C.F.R § 404.1546(c); SSR 96-5p. An ALJ is responsible for reviewing the evidence, resolving conflicts in that evidence, and making findings of fact and conclusions of law. *See Siedlecki v. Apfel*, 46 F. Supp. 2d 729, 732 (N.D. Ohio 1999). There is no legal requirement that each limitation in an RFC determined by an ALJ corresponds to a specific medical opinion. *See Brown v. Com'r of Soc. Sec.*, 602 Fed. Appx. 328, 331 (6th Cir. 2015). Indeed, ALJs are not bound by any medical opinion on an issue reserved to the Commissioner (*i.e.,* a claimant's RFC finding). 20 C.F.R. § 404.1527(d)(2)-(e), 416.927(d)(2)-(e).

Based upon close review by the undersigned, it is clear that the ALJ's assessment of the medical opinion evidence is substantially supported both by his articulated analysis, and by the record as a whole.

### b. The ALJ's Failure to Include Additional Limitations

In addition to his general complaints relating to the articulation of the ALJ's analysis of the medical opinion evidence, Plaintiff criticizes the ALJ's failure to

---

of any significant treatment records to support any claim of disability between 2009 and 2014, and suggested that "we would be amenable to an [amended] onset date…in 2014." (Tr. 82-83).

adequately articulate the basis for the overhead lifting restriction in light of the fact that no medical doctor offered that specific functional limitation. As the foregoing analysis makes clear, no specific medical opinion was required. Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined a plaintiff's RFC based on objective medical evidence and non-medical evidence. *See Poe v. Com'r of Soc. Sec.,* 342 Fed. Appx. 149, 156-157 (6th Cir. 2009); *Ford v. Com'r of Soc. Sec.,* 114 Fed. Appx. 194 (6th Cir. 2004).

The undersigned finds that the ALJ appropriately considered all relevant evidence of record with respect to Plaintiff's shoulder impairment, including Plaintiff's own report that he has "difficulty reaching overhead with his left shoulder," and his testimony that he could lift 15 to 20 pounds. (Tr. 27). With respect to shoulder, the ALJ explained:

> An April 2013 left x-ray of Plaintiff's left shoulder was negative for fracture or dislocation and the acromioclavicular (AC) joint and glenohumeral joint appeared within normal limits…. In February 2014, the claimant exhibited normal range of motion, muscle strength and stability in all extremities with no pain on inspection…. A February 2014 x-ray of the lumbar spine displayed mild to moderate degenerative disc disease at L5 to S1…. In April 2014, the claimant was noted to have diffuse pain to palpation around the left shoulder girdle and mildly positive impingement sign, but had full range of motion and 5/5 rotator cuff strength…. A May 2014 MRI of the left shoulder displayed supraspinatus tendinosis, acromioclavicular arthrosis and a type 2 acromion resulting in lateral arch stenosis…. In June 2014, the claimant displayed mildly diminished rotator cuff strength but full forward elevation and external rotation….

(Tr. 27).

The May 2014 MRI to which the ALJ referred also showed no evidence of a macro tear or tendon retraction and only mild AC joint arthritis. (Tr. 463, 468, 478-479). Some 2014 and 2015 records reflect a mildly positive left shoulder impingement syndrome as indicated by the ALJ, (*see* Tr. 464), but Plaintiff fails to explain why those

findings would require any greater limitations than the overhead lifting restriction specified by the ALJ. (*See* Tr. 27, citing Tr. 454, 456, 458, 460-62, 467; *see also* Tr. 451 (full range of motion in both shoulders during February 2014 exam); Tr. 459 (injection to right shoulder based on subjective complaints, noting "shoulder exam is fairly benign although he does have some positive impingement signs"); Tr. 456 (6/15/15 exam noting positive Phalen's but negative Spurling's tests, good coordination, normal strength, normal range of motion in both shoulders); Tr. 454 (9/10/2015 exam noting good coordination and balance, normal gait and normal strength, despite "[m]ild to moderate loss of flexion and extension [in lumbar region] due to guarding but not severe pain")).

At the hearing, Plaintiff testified that the muscle relaxant he has been prescribed has reduced his pain level from a "five, to about a two," and helps him function better. (Tr. 57). The ALJ also explicitly considered that Plaintiff's obesity "can cause or contribute to [his] impairments" in the musculoskeletal as well as other body systems, (Tr. 27), and referenced the two consulting examination reports from 2011 and 2012. In short, the ALJ's basis for including the overhead reaching restriction concerning Plaintiff's left shoulder is extremely well supported by the record as a whole.

The substantial support for the overhead lifting restriction, however, does not translate into support for Plaintiff's assertion before this Court that he required additional limitations relating to his use of his hands. None of the medical consultants (including Drs. Perdomo and Grant) found any limitations relating to Plaintiff's arm strength, grip strength, or fine manipulation abilities. The only evidence offered to support any additional limitations for the use of Plaintiff's arms or hands was Plaintiff's subjective testimony at the hearing that he experiences numbness and pain in his arms or hands,

and has problems with gripping with his left hand "[f]rom time to time," such as when he holds a small object like a pen to write for significant periods of time. (Tr. 55). The ALJ did not find Plaintiff's subjective complaints to be fully credible. Moreover, EMG testing was negative, (Tr. 56), and Plaintiff also testified that he only had difficulty with reaching his left hand higher than his neck, and that reaching forward did not bother him. (Tr. 58). Notably, Plaintiff directs this Court to no medical evidence anywhere in the record to support the assertion that he would require fingering or handling limitations. Based upon the record presented, the undersigned finds substantial support for the ALJ's failure to include such additional limitations.

For essentially the same reasons, the undersigned finds no error in the ALJ's failure to adopt Dr. Perdomo's wholly unsupported and extreme postural limitations. There appears to be no medical support whatsoever for those limitations.

### 2. Substantial Evidence Supports the Mental RFC

As a separate assertion of error, Plaintiff criticizes the ALJ's evaluation of the psychological opinion evidence, and his failure to include additional mental limitations. The ALJ included the following mental RFC restrictions: "The claimant is …limited to routine tasks with no fast-paced work, no strict production quotas, and minimal or infrequent changes in the work setting; and he is limited to frequent interaction with the public, co-workers and supervisors." (Tr. 26). Because the referenced limitations are well supported in the record as a whole, and additional limitations are not, I find no error.[7]

––––––––––––––––––––

[7]In his reply, Plaintiff asserts that the ALJ set forth "no limitations on attention or pace" and "no limitations on stress or pressure in doing unskilled competitive work." (Doc. 7 at 5, emphasis added). With all due respect, the limitations set forth by the ALJ in this case clearly and directly address pace (no fast-paced work and no strict production quotas), attention (routine tasks and minimal or infrequent changes), and

Plaintiff underwent three psychological consulting examinations, corresponding to each of his applications for benefits. The ALJ reviewed and explicitly discussed each of the three examination reports, dated February 2011, March 2012, and October 2013. (Tr. 29-30). The ALJ also discussed treatment records from 2014 and 2015, and the opinions of two non-examining psychological consultants. (*Id.*) The ALJ considered additional records that consistently demonstrated that Plaintiff was alert, oriented, cooperative, with a normal mood and affect, and intact cognition and memory. (Tr. 25, 28-30, *see generally* Tr. 304, 323, 334, 399, 422, 424, 427, 433, 438, 443, 451, 454, 469). Last, the ALJ discussed Plaintiff's hearing testimony, including his testimony that he was not on any anti-depressants at the time of his most recent consulting exam in 2013, and that a mood-stabilizing medication is effective in leveling his moods. (Tr. 30, citing Tr. 62). Plaintiff further testified that his mental impairments did not impact his ability to work as much as his physical issues, and that he would be able to return to work if his physical symptoms were improved. (*Id.*)

In attacking the mental RFC determined by the ALJ, Plaintiff first argues that the ALJ should have restricted him to less than "frequent" interactions with the public, co-workers and supervisors based upon the finding of "poor peer relationships" noted in the second consulting examination report in 2012 (Tr. 314), and the "moderate" limitations with co-workers and changes in the work setting assessed by the most recent agency reviewing consultants. (Tr. 133). Plaintiff also points to Dr. Berg's statement in his 2013 report that he would have "some" difficulty with supervisors and co-workers. (Tr.

_____

stress (all of the foregoing limitations, plus no more than "frequent" interaction with the public, co-workers, and supervisors).

376-377).  However, the latter statement arguably is consistent with the restriction assessed by the ALJ.

With respect to the 2012 examining consultant's brief reference to "poor peer relationships," the ALJ noted that the report's conclusion of "limited social functioning" based primarily upon Plaintiff's depressive symptoms was "vague and does not provide for specific workplace limitations."  (Tr. 29).  In addition, the ALJ accurately pointed out that one year earlier in the 2011 report, the examining consultant found <u>no</u> impairment in social functioning.  And, although the 2012 report cited Plaintiff's depressive symptoms as the root of his social limitations at that time, Plaintiff testified he was not taking anti-depressants by the time of his 2013 examination.  (Tr. 29).  The rejection of any greater social limitations, (*see* Tr. 29), is also supported by other substantial evidence.  The record includes evidence that Plaintiff spends time with his fiancé and socializes with his friends on the phone and online.  (Tr. 29-30).  Plaintiff's own testimony also supports the no more than "frequent" limitation with co-workers and supervisors found by the ALJ.  He testified that he "sometimes" had difficulty getting along on past jobs with "that one person that thought they were better than everybody [else]," but implied that he was able to get along with most people and emphasized that he consistently "got along pretty well with my bosses."  (Tr. 66).  Plaintiff also denied any problems interacting with people he doesn't know when he goes out in public.  (*Id.*)

Plaintiff next appears to advocate for greater limitations due to work stress, but does not specifically articulate what greater limitations he believes the ALJ should have imposed.  Plaintiff's hearing testimony on this issue was that he "can" have "anger and poor stress tolerance" but "not all the time." (Tr. 76).  Plaintiff points only to Dr. Berg's statement in the 2013 report that he would have "some" difficulty dealing with work

stress. (Tr. 376-377).  The state reviewing consultants gave "great weight" to Dr. Berg's assessment, and the ALJ in turn gave "great weight" to the state reviewing consultants. However, the undersigned concludes that Dr. Berg's modest assessment of "some" difficulty with work stress was adequately accommodated by the ALJ's limitation to routine tasks with no fast-paced work, no strict production quotas, and minimal or infrequent changes in the work setting.

Plaintiff's final criticism of the mental RFC relies on Dr. Berg's findings that Plaintiff worked in a slow manner, was depressed and was anxious all the time, (Tr. 373-374), and "at times" would have difficulty with attention and with being persistent. (Tr. 376). Dr. Berg opined that Plaintiff could perform simple tasks as well as two-step tasks.  Likewise, the reviewing consultants opined that Plaintiff would have moderate limitations in maintaining concentration, persistence or pace, but that he could perform one to two step tasks with no fast pace work or a strict production standard.  (*See* Tr. 29).  The ALJ's mental RFC tracked the latter opinion insofar as the ALJ limited Plaintiff to no fast-paced work and no strict production quotas, and only "routine" tasks with minimal/infrequent changes.  Again without specifying precisely what greater limitations the ALJ should have included, Plaintiff argues somewhat generically that the ALJ did not adequately account for his attention and persistence problems. *See, generally Ealy v. Com'r*, 594 F.3d 504, 515-517 (6th Cir. 2010) (finding hypothetical insufficient when it failed to include specific two-hour pace and speed limitations).

Unlike in *Ealy*, none of the consultants opined that Plaintiff had any particular hourly speed and pace limitations.  Many post-*Ealy* decisions have confirmed that in cases like this one, which do not include specific hourly restrictions, a limitation to simple, repetitive tasks is sufficient to accommodate a moderate impairment in

concentration, persistence, and pace. *See, e.g., Hicks v. Com'r*, Case No. 1:13-cv-425-SJD, 2014 WL 4748356 at *6 (R&R adopted Sept. 23, 2014); *Suesz v. Com'r*, 2014 WL 4162555 at *6 (R&R adopted Aug. 20, 2014); *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio Feb. 1, 2013)(collecting cases); *Steed v. Astrue,* 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Com'r of Soc. Sec.,* 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011).

The ALJ's mental RFC deviated only slightly from the most limiting consulting opinions in the record, by stating that Plaintiff was limited to "routine" work rather than specifying "simple" or two-step work. However, social security regulations define all unskilled work as "simple" in that it "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Thompson v. Com'r of Soc. Sec.*, 2014 WL 1232722, at *7 (W.D. Mich. 2014) (citing 20 C.F.R. §§ 404.1568(a) and 416.968(a)).

Perhaps more importantly in this case, the ALJ did not adopt any more specific limitations. Even though Dr. Berg and the reviewing consultants both opined that Plaintiff's limitations in concentration, persistence and pace were compatible with two-step tasks, the ALJ pointed out that the 2011 examining consultant - whose opinions he gave "some weight" - found no significant memory impairment and good attention and concentration. (Tr. 29). And – while the ALJ gave more "limited weight" to the 2012 consulting report - those examiners also found adequate attention and concentration with no impairment in Plaintiff's short-term memory. (*Id.*) Thus, the record as a whole substantially supports the RFC as articulated by the ALJ, without additional language limiting Plaintiff to "two-step" work or other limitations in concentration, persistence or pace. *Cf. Smith v. Halter,* 307 F.3d 377, 378–79 (6th Cir.2001) (holding that the ALJ did

not need to include talismanic language in his hypothetical concerning plaintiff's difficulties in concentration, persistence and pace where the claimant's concentration difficulties were negligible and the ALJ limited the claimant to "routine and low stress" jobs that did not involve "high quotas").

### 3. The Adverse Credibility Determination

Plaintiff additionally argues that the ALJ erred in his evaluation of Plaintiff's credibility and subjective complaints. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely supported for the reasons explained in this decision." (Tr. 27). The ALJ noted that despite his reported back pain that "is generally at a five on a ten-point pain scale," Plaintiff also testified that "his pain decreases to two with medication." (*Id.*; *see also* Tr. 57, stating that medication helps him function better "for the most part."). The hearing transcript reflects that Plaintiff testified that the effective medication in question is a muscle relaxant, and that he takes no prescription pain medications. (Tr. 56-57). And, as noted, Plaintiff testified that "depression does not affect his ability to work." (Tr. 27). In the following

discussion, the ALJ further explained why he discounted Plaintiff's subjective complaints that his symptoms were disabling:

> The claimant's overarching allegations of disability are partially consistent with the record. While the claimant testified he could lift ten to fifteen pounds and walk for fifty feet, the record documents the claimant exhibited normal range of motion, full muscle strength and a normal gait upon examination…. In addition, the claimant reported depression, paranoia and trouble completing tasks…. However, the overall record documents the claimant was often alert, oriented, cooperative and displayed a good mood and intact cognition during mental status examinations…. The psychological consultative examiner reported that the claimant's social functioning did not appear impaired…. Moreover, the claimant reported he was not on any medication for depression during the October 2013 psychological consultative examination…. At the hearing, the claimant testified that his prescribed medication, Depakote, levels out his mood and that he would return to work with his depression if he no longer had any physical impairments…. Finally[,] the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported that he drives two to three times per week and performs most of his household chores…. These activities are not consistent with his allegations of totally disabling limitations.

(Tr. 30).

In urging this Court to reverse, Plaintiff first complains that the ALJ did not adequately articulate or explain the adverse credibility finding. The Plaintiff is particularly critical of the ALJ's failure to adopt Dr. Grant's assessment that Plaintiff's "subjective complaints are consistent with the objective medical findings," but as explained above, substantial evidence supports the ALJ's decision to give that opinion "no weight." Plaintiff also criticizes the ALJ's reference to his daily activity level. However, that reference was not the sole basis for the ALJ's assessment of the severity of Plaintiff's impairments. Instead, the ALJ appropriately considered the record as a whole, including the lack of medical evidence to support the severity of Plaintiff's subjective complaints. *See also* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a factor to be considered).

Having closely reviewed the ALJ's analysis of Plaintiff's subjective complaints, the undersigned finds it to be both adequately articulated, and substantially supported. As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir. 1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The fact that there is an evidentiary basis for some level of pain does not mean that an ALJ must find that a plaintiff suffers from a disabling level of pain. *See Bruce v. Com'r*, 2009 WL 239023 at*12 (S.D. Ohio Jan. 29, 2009) (affirming evaluation of plaintiff's back pain as less than disabling). On the whole, Plaintiff's arguments on credibility amount to a reweighing of the evidence, and do nothing to undermine the substantial evidence that supports the ALJ's credibility determination.

### 4. The Vocational Expert Testimony

Plaintiff's final assertion of error builds on his earlier claims. Plaintiff argues that at Step 5 of the sequential analysis, the ALJ used an improper hypothetical, and that therefore the testimony by the vocational expert in response to the hypothetical does not provide substantial evidence to uphold the decision in this case. Specifically, Plaintiff maintains that the ALJ erred by failing to include: (1) additional limitations "on handling, fingering, feeling, or reaching on the left;" (2) Dr. Perdomo's postural limitations (essentially limiting Plaintiff to four hours of work per day); (3) additional "attention" and/or concentration, persistence or pace limitations; and (4) "other limitations on dealing with people." (Doc. 5 at 12). For the reasons previously stated, I find no error. *See Jordan v. Com'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national

economy that the claimant is capable of performing…. The claimant, however, retains the burden of proving [his] lack of residual functional capacity."). Here, the ALJ reasonably relied on the vocational expert's testimony to show that Plaintiff could perform other work, in response to a well-supported hypothetical question. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SEAN ROBERT CAMPBELL,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. 17-cv-292

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).